UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

NATHAN L. STILTNER,

    Plaintiff,

    v.

MARTY V. DONINI, et al.,

    Defendants

Case No. 1:19-cv-150

Black, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff, presently incarcerated at the Noble Correctional Institution, proceeding *pro se* and *in forma pauperis*, has filed a civil complaint pursuant to 42 U.S.C. § 1983. (Doc. 3). Upon initial screening, the Court dismissed all claims against the Defendants in their individual capacities. However, the Court held that two claims against the Defendants in their official capacities, construed as claims against Scioto County under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 98 S. Ct. 2018 (1978), should be permitted to proceed. (*See generally*, Docs. 4, 7).

Plaintiff alleges that Defendants Scioto County Sheriff Marty Donini, and Scioto County Commissioners Cathy Coleman, Mike Crabtree, and Bryan Davis violated his constitutional right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the Constitution when he was previously incarcerated at the Scioto County Correctional Center. More specifically, Plaintiff alleges that: (1) Defendants failed to protect him from assault and (2) Defendants provided inadequate medical care after an assault. Pursuant to local practice, Defendants' Motion for Summary Judgment (Doc. 33) has been referred to the undersigned magistrate judge for

1

initial consideration and a report and recommendation. For the reasons stated, Defendants' motion should be GRANTED.

## I. Summary Judgment Standard of Review

In a motion for summary judgment, "a court must view the facts and any inferences that can be drawn from those facts . . . in the light most favorable to the non-moving party." *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (internal quotation marks omitted). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(e)) (internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment—rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

After a moving party has carried its initial burden of showing that no genuine issues of material fact remain in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (citing *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). In order to survive summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505 (1986). The non-moving party's evidence "is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. The court determines whether the evidence

requires submission to a jury, or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251-52.

Although reasonable inferences must be drawn in favor of the opposing party, *see id.* at 255, he must present significant probative evidence tending to support the complaint. *First Nat'l Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575 (1968). To demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

**II.     Findings of Fact**

The following facts are largely undisputed. In accordance with Rule 56 standards, where discrepancies exist, the facts have been construed in Plaintiff's favor except for instances in which unrebutted record evidence flatly contradicts Plaintiff's allegations.

In August of 2018, Plaintiff Nathan Stiltner was placed in the Scioto County Correction Center ("S.C.C.C." or "jail").   S.C.C.C. has policies intended to prevent the introduction of weapons and contraband into the facility, and to discover weapons and contraband inmates may create from standard items inside the facility. (Doc. 33-1 at 2, ¶10). All inmates are frisk searched for weapons and contraband when entering S.C.C.C. and its security perimeter (*Id.* at 2, ¶11; *see also* Doc. 33-1 at 9-10, Policies 4.06 – 4.09). The security perimeter is defined as "[t]he outer secure boundary enclosing the entire portion of the facility in which inmates are confined, including any area to which inmates may have access." (Doc. 33-1, at 32).

3

If the inmate enters general population and comes in from the street (as opposed to coming from a different jail or other secured facility), the inmate is visually observed while removing all clothing other than his undergarments. (*Id.* at 2, ¶12 (citing 4.05); *see also* Doc. 33-1 at 26). Then, the inmate takes a shower and is issued a jail uniform. (*Id.*) This visual observation provides another opportunity to discover contraband or weapons the inmate may be hiding underneath his clothing. (*Id.* at 2). Strip searches and body cavity searches are also authorized upon reasonable suspicion and probable cause, respectively. (*Id.* at 2, ¶13 (citing 4.09); *id.* at 10-15).

Unlike the initial entry of inmates into the jail, inmates who are housed within it are not typically searched when moving within the facility's security perimeter. (*Id.* at 3). Nevertheless, S.C.C.C. has a security program intended to ensure the safety of the inmates housed within the jail. (*Id.* at 3). All inmate movement from one area of the facility to another is controlled by staff. (*Id.* at 36). Additionally, inmate workers are frisk searched prior to their return to a housing unit and are subject to random searches during their work assignments. (*Id.*) If an inmate has worked outside the security perimeter, he must be supervised and go through the "Securpass Body Scanner" prior to re-entry into the facility. (*Id.*) Moreover, officers are instructed to conduct weekly shakedowns or spot checks of selected housing areas and all other inmate accessible areas in a manner that ensures that all areas are inspected at least once a month. (*Id.* at 38).

On September 4, 2018, corrections officers responded to a fight in S.C.C.C.'s "D-pod," where Plaintiff was housed. (*Id.* at 1, 6). The fight involved inmates Donald Copley, Jr., Christopher Conley, John Sparks, Donald Stiltner, Jeffrey Marsh, and Plaintiff. (*Id.*) Donald Stiltner and Jeffrey Marsh shared a cell with Plaintiff and are his brother and

stepbrother, respectively. (Doc. 32-1, Plaintiff's deposition, at 18). Prior to September, 2018, Plaintiff was not involved in any other fights or altercations with inmates Copley, Conley, or Sparks. (*Id.* at 15). However, the day before the altercation, Plaintiff heard Sparks state "the pit bulls are going to be released." (*Id.* at 17). Plaintiff did not know the meaning of Sparks' statement. (*Id.*) Plaintiff neither communicated any concerns for his safety to jail employees, nor anticipated being attacked prior to September 4, 2018. (*Id.* at 15).

An investigatory video review of the altercation determined that inmates Conley, Sparks, and Copley ran into Plaintiff's cell and began hitting him and his cellmates. (Doc. 33-1 at 1-2, 6). Inmates Conley, Sparks, and Copley were immediately locked down following the altercation. (*Id.* at 2, 6). An investigation later revealed that a metal bar had been broken off a bunk in S.C.C.C.'s "A-pod," and may have been used by Plaintiff's assailant, since it was found inside D-pod where the altercation occurred. (*Id.*)

Immediately following the altercation, Plaintiff was escorted to King's Daughters Medical Center to receive treatment for a gash on the inside of his lower lip. (Doc. 33-1 at 1). Plaintiff's complaint alleges that he suffered a broken cheekbone and that his top and bottom teeth were chipped, with two of his bottom teeth "broken in half." (Complaint at ¶15). While at the hospital, Plaintiff was seen by Kevin Wolfe, APRN, who diagnosed Plaintiff with a closed fracture of the maxillary sinus and with mandible pain. (Doc. 35-1 at 9). The medical record does not refer to damaged teeth or to any other facial fracture. (*Id.*) Wolfe provided Plaintiff with pain medication but did not refer him for any specific follow-up care. (*Id.*, at 9: "You currently have no upcoming appointments scheduled."; *see also* Doc. 32-1 at 21-22).

Plaintiff was discharged from the hospital the same day and was provided with preprinted Discharge Instructions concerning care for "facial fracture." (Doc. 35-1 at 12-13). At the bottom of the Instructions is the statement: "The above information is an educational aid only. It is not intended as medical advice for individual conditions or treatments." (*Id.* at 13). The Instructions address a broad range of injuries[1] and include advice on topics ranging from post-surgical facial rehabilitation,[2] the use of ice to decrease swelling and pain, and steps to prevent future fractures (wearing a helmet when riding a bicycle, or a seatbelt when riding in a car). (*Id.* at 12-13). Patients are advised to follow up with a primary care physician for "bleeding from a wound" or "double vision" or for any "questions or concerns about your condition or care." (*Id.* at 13).

Pursuant to jail policy, inmates are to be provided "appropriate medical care." (Doc. 33-1, Affidavit of Jail Administrator James Carter at ¶20, citing Policy 753). Inmates may submit medical request forms, and all requests are required to be saved to the inmate's medical file. (*Id.* at 3, ¶27). Plaintiff alleges that after he returned to S.C.C.C., his teeth continued to hurt when eating and when brushing. (Doc. 3, Complaint at ¶17). The complaint alleges that he filed a grievance "about not getting the proper medical care to fix any of this unbearable pain, and it was never responded to." (*Id.* at ¶18).

In support of summary judgment, Jail Administrator Carter attests that S.C.C.C. has no record of any medical requests submitted by Plaintiff seeking additional dental or medical care for his September injuries. In addition, Carter is not aware of any such

---

[1] For example, the Instructions advise patients to return to the emergency department if the patient experiences "chest pain when you take a deep breath or cough," or if "[y]our arm or leg feels warm, tender, and painful." (35-1 at 13).

[2] Not all fractures require surgical treatment. Plaintiff was not referred for surgery or for rehabilitation for his nasal fracture. (*See, e.g.*, Doc. 35-1 at 12: "Rehabilitation: If you had surgery to fix your facial fracture, you may need oral and facial rehabilitation. This is done to restore normal use and movement of your facial muscles. Ask for more information about rehabilitation.").

6

requests. (*See* Doc. 33-1 at 5, ¶¶26-28; *but compare* Doc. 32-1, Plaintiff's deposition at 29-30). In opposition to summary judgment, Plaintiff has submitted no evidence to support his allegation that he sought but was denied medical care for his September injuries.[3]

In contrast to the allegation in his complaint, Plaintiff testified that the only grievance he filed regarding his medical care related to a complaint of low blood sugar, (Doc. 32-1 at 34). Although Plaintiff filed a separate grievance in October 2018 about the assault, that grievance complained about the jail's failure to prevent the assault - "to uphold my constitutional rights to be safe and protected" – not the medical care he received. (Doc. 32-1 at 38). In addition, the parties agree that Plaintiff sought and received relatively extensive care, including surgery, for a wrist fracture sustained at O.C.C.C. during an unrelated altercation in December 2018. (Doc. 32-1 at 31-33).

### III. Analysis

A civil rights claim under 42 U.S.C. § 1983 requires (1) that the conduct at issue be under color of state law, and (2) that the conduct cause a deprivation of a right secured by the Constitution or laws of the United States. *Kosloski v. Dunlap*, 347 Fed. Appx. 177, 179 (6th Cir. 2009). Plaintiff seeks to hold Scioto County liable for two alleged constitutional injuries: (1) a failure to protect him from attack by fellow inmates; and (2) a failure to provide adequate medical treatment following that attack.

A local government may not be held liable under a theory of *respondeat superior*. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691, 98 S. Ct. 2018,

---

[3] Defendants' motion acknowledges Plaintiff's deposition testimony that he submitted requests. However, Plaintiff himself does not rely on that testimony or point to any evidentiary exhibits that could substantiate his claim.

2036 (1978). "It is firmly established that a municipality, or as in this case a county, cannot be held liable under § 1983 for an injury inflicted solely by its employees or agents." *Gregory v. Shelby County, Tenn.*, 220 F.3d 433, 441 (6th Cir. 2000) (citing *Monell,* 436 U.S. at 694). To state a claim for relief against Scioto County for his alleged injuries, Plaintiff must allege and prove that his "injuries were the result of an unconstitutional policy or custom of the County." *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994); *Polk County v. Dodson*, 454 U.S. 312 (1981) (municipal policy must be "moving force" behind constitutional deprivation). Thus, to succeed on his *Monell* claim, Plaintiff must: "(1) identify the municipal policy or custom, (2) connect the policy to the municipality and (3) show that [Plaintiff's] particular injury was incurred due to the execution of that policy." *Turner v. City of Taylor*, 414 F.3d 629, 639 (6th Cir. 2005) (internal quotation marks and citation omitted).

In the pending motion, Defendants argue Plaintiff's claims fail as a matter of law for two reasons: (1) Plaintiff cannot establish that he suffered *any* violation of his constitutional rights; and (2) even if he could show a constitutional deprivation causing injury, he cannot identify any County policy or custom that was the "moving force" behind his injury. The undersigned agrees.

### A. Plaintiff's Failure to Establish Any Constitutional Violation

Plaintiff grounds two separate claims in the Eighth Amendment's prohibition against "cruel and unusual" punishment.[4] The claims are: (1) that Defendants exhibited

---

[4]Defendants suggests that Plaintiff was incarcerated in the jail pending prosecution on murder charges. (Doc. 33-1, Declaration of Jail Administrator, at ¶3). However, the Eighth Amendment's "cruel and unusual punishments" clause is inapplicable to pretrial detainees. *See Spencer v. Bouchard,* 449 F.3d 721, 727 (6th Cir.2006); *Weaver v. Shadoan,* 340 F.3d 398, 410 (6th Cir.2003). That portion of the Eighth Amendment does not apply "until after [the State] has secured a formal adjudication of guilt in accordance with due process of law." *Ingraham v. Wright,* 430 U.S. 651, 671 n. 40, 97 S.Ct. 1401 (1977). Still, the record is unclear as to whether Plaintiff was merely a pretrial detainee, or whether he was being held at the jail after

8

deliberate indifference when they failed to protect him from assault; and (2) that Defendants exhibited deliberate indifference to his serious medical needs after the assault. Following incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment. *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321 (1991) (quoting *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078 (1986)). In cases like this one, where conduct that does not purport to be punishment at all is challenged as "cruel and unusual", it must involve more than ordinary lack of due care for the prisoner's interests or safety. *Id.* at 298-99. Therefore, an inquiry into a prison official's state of mind is necessary. *Id.* at 299. Here, both of Plaintiff's constitutional claims against Scioto County fail as a matter of law.

### 1. Failure to Protect Claim

Plaintiff's complaint alleges that Defendants failed to protect him "by not searching Donny Copley and or his property with S.C.C.C. metal detector before and after the C.O.'s moved him from A-Pod to D-Pod." (Doc. 3 at ¶14). The Eighth Amendment imposes on prison officials a duty to take "reasonable measures to guarantee the safety of the inmates," *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970 (1994), which includes "protect[ing] prisoners from violence at the hands of other prisoners." *Id.* at 833, 114 S.Ct. 1970 (internal citation omitted); *see also Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001). To establish liability for a claim based on a failure to prevent harm to an inmate, Plaintiff must show that prison officials, in accordance with County policies, acted with deliberate

---

already having been convicted on other charges. (Doc. 32-1, Plaintiff's Deposition at 12). In any event, pretrial detainees enjoy protections analogous to those afforded prison inmates under the Due Process Clause of the Fourteenth Amendment. *See Blackmore v. Kalamazoo County*, 390 F.3d 890 (6th Cir. 2004). Because Defendants do not contest the invocation of Eighth Amendment standards, and because those standards mirror those applicable to pretrial detainees, the undersigned finds no need to resolve the issue.

indifference to a substantial risk of serious harm. *Id.* (citing *Farmer*, 511 U.S. at 834). "Deliberate indifference" occurs when the official knows of and disregards an excessive risk to inmate health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference. *Farmer*, 511 U.S. at 837. Therefore, a prison official can be liable if he disregards that risk by failing to take reasonable measures to abate it. *Id.* at 847.

None of the Defendants are alleged to have been present at the jail or to have had any direct involvement in the attack. Therefore, Plaintiff's claim is construed as a claim that Defendants promulgated security policies that were inadequate to prevent the attack, based upon a difference in the level of search required of inmates newly admitted to S.C.C.C., and the level of scrutiny imposed on inmates moving from one pod to another within the secure perimeter of the jail facility.

In addition to pointing to the explicit policies that differentiate the search policies applicable to inmates entering the jail versus inmates moving within the jail, Plaintiff expounds upon the "proof" that the different policies led to his assault. In support of his claim, he has submitted the declaration of another inmate that reflects that a window was broken in the "A pod" of the prison roughly two weeks prior to the assault. (Doc. 35-1 at 2). Plaintiff suggests that the window likely was broken by the same metal bar that was later fashioned into the weapon used in his assault. He speculates that if S.C.C.C. had performed a more thorough investigation of the broken window incident, jail investigators might have discovered and seized the metal bar, thereby preventing further harm. However, Plaintiff's hypothesis is insufficient to show that the *County* (or any named

10

Defendant) was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and actually drew that inference.

In fact, Plaintiff offers no evidence that anything about the attack that he experienced at the jail was predictable. For example, he does not suggest that inmates moving from one pod to another attacked other inmates at such a high rate of frequency that the County knew, or should have known, that existing security policies put all inmates at risk. Plaintiff testified that he had no way of predicting the attack and did not inform anyone at the jail of any security concerns prior to the attack. (Doc. 32-1 at 15). In order to demonstrate deliberate indifference, Plaintiff must demonstrate some *specific* threat of harm. *See Tucker v. Evans*, 276 F.3d 999, 1002 (8th Cir. 2002) (finding that there was no evidence the deceased inmate was the target of an impending attack; therefore, prison officials did not have any specific, actual knowledge about a threat of harm to the inmate).

In opposing Defendants' motion, Plaintiff argues that "there is evidence of negligence and derelict of duty to enforce [the County's] policies and procedures." (Doc. 35 at 6; *see also id.* at 5, arguing that "negligence or dereliction of duty is the cause of a failure-to-protect constitutional violation."). However, "not all injuries suffered by an inmate at the hands of another prisoner result in constitutional liability." *Wilson v. Yaklich,* 148 F.3d 596, 600 (6th Cir.1998). The plaintiff must demonstrate that there was "deliberate indifference to inmate health or safety." *Farmer, supra,* 511 U.S. at 834, 114 S.Ct. 1970 (citing *Wilson v. Seiter,* 501 U.S. 294, 298, 302–303, 111 S.Ct. 2321 (1991)). A prison official cannot be deliberately indifferent when an inmate is a victim of an unforeseeable attack because an official cannot disregard a risk he is unaware of. *See Tucker*, 276 F.3d at 1001. A prison official's negligence is insufficient to support an Eighth

11

Amendment failure to protect violation. *Kosloski v. Dunlap*, 347 Fed. Appx. at 180 (citing *Ford v. County of Grand Traverse*, 535 F.3d 483, 495 (6th Cir. 2008)). Because Plaintiff has failed to offer any evidence that any Defendant was aware of a specific risk of harm but took deliberate action to disregard that risk, he cannot show that the County (or any of its officials) exhibited deliberate indifference by failing to protect him from assault.

### 2. Deliberate Indifference to Medical Needs Claim

Plaintiff's claim that Defendants were deliberately indifferent to his medical needs following the altercation fails for similar reasons. Deliberate indifference to a prisoner's serious medical needs constitutes "the unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. *Kosloski*, 347 Fed. Appx. at 179 (quoting *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285 (1976)). A deliberate indifference claim has subjective and objective components. *Id.* The objective component requires a prisoner to show that his medical need was "sufficiently serious." *Id.* (quoting *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). The subjective component requires the prisoner to demonstrate the official being sued had a "sufficiently culpable state of mind in denying medical care." *Id.* (quoting *Blackmore v. Kalamazoo County*, 390 F.3d at 895). A prison official cannot be found liable under the Eighth Amendment for deliberate indifference to a prisoner's medical needs unless at the time of the conduct: (1) the official is aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and (2) the official actually draws the inference. *Id.* (citing *Farmer,* 511 U.S. at 837). Further, where a prisoner alleges only that the medical care he received was inadequate, "federal courts are generally reluctant to second guess medical judgments." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (quoting *Westlake v. Lucas*,

537 F.2d 857, 860 n.5 (6th Cir. 1976)). Medical treatment must be "so woefully inadequate as to amount to no treatment at all," to be considered deliberately indifferent. *Id.*

Here, Plaintiff was immediately transported to the hospital after the altercation, where he received medical treatment and pain medication for his injuries. He was released back to the jail the same day. The record further reflects that no specific follow-up treatment was prescribed or recommended. Although Plaintiff claims that he sought additional treatment for mouth pain, Defendants have offered evidence to the contrary, which Plaintiff has failed to refute. Clearly, Plaintiff believes that he should have received additional dental and/or medical treatment but he fails to offer any evidence to suggest what, if any, follow-up treatment was medically necessary but not provided.[5]

In opposition to the motion for summary judgment, Plaintiff points to the more extensive treatment provided by or through S.C.C.C. in December 2018, when he was involved in another altercation and broke his wrist, requiring surgery. (*See* Doc. 35 at 7; Doc. 35-1 at 4-8). He argues that the treatment for that broken bone proves that medical staff knew "how important it is" to receive follow-up care, and that staff "should have known to schedule an appointment/referral…to specialists on 9-4-2018." (*Id.*) However, Plaintiff's argument and exhibits documenting the more extensive care provided by the jail for his wrist undercut his contention that the jail or County has a systemic policy of exhibiting deliberate indifference to serious medical needs. An isolated incident of medical negligence does not constitute deliberate indifference to a serious medical need.

---

[5]When questioned about the issue at his deposition, Plaintiff offered only his opinion that he believed that SCCC should have "sen[t] me to Columbus and get, you know, whatever they do for your facial fracture." (Doc. 32-1 at 71).

13

Plaintiff also points to no evidence to suggest that he suffered any harm from the alleged lack of "adequate" follow-up treatment in September.

In short, neither any named Defendant nor the County appears to have consciously disregarded Plaintiff's objectively serious medical needs. Nothing in the record suggests that any Defendant was aware that Plaintiff had a serious medical need that was not being met, or that a substantial risk of serious harm existed, and there is no evidence that any harm resulted from the lack of follow-up care.

### B. Plaintiff's Failure to Show Culpable Conduct by the County

Plaintiff alleges that the County's policies were unconstitutional because they enabled jail employees to disregard his physical safety and medical needs. The undersigned has concluded that Defendants are entitled to judgment based on the absence of any constitutional violation. However, even if a genuine issue of material fact remained concerning whether any Defendant violated Plaintiff's constitutional rights by failing to protect him or by exhibiting deliberate indifference to a serious medical need, Defendants still would be entitled to summary judgment because Plaintiff has failed to establish that any County policy was the "moving force" that caused the constitutional injury. *Collins v. City of Harker Heights*, 503 U.S. 115, 115, 112 S.Ct. 1061 (1992). On the record presented, there is no causal link between any County policy and either alleged deprivation.

#### 1. The County's Security Policies

The jail's security policies require inmates to be searched for contraband when entering the jail from the street, or when they enter or leave the facility's security perimeter. (Doc. 33-1 at 3, ¶¶14-17, citing 4.07). S.C.C.C.'s security program also

requires staff to observe and control all inmate movement from one area to another in order to maintain a secure facility. In addition, all inmates are to be observed every 30 to 60 minutes. (*Id.* at 3, ¶16). Jail personnel are also required to conduct weekly shakedowns or spot checks of selected housing areas and all inmate accessible areas, such that all areas are inspected at least once a month. (*See, e.g.*, *id.* at 3, ¶15, citing 4.07, 4.12 - 4.14).

Plaintiff has failed to show that the referenced policies caused another inmate to physically assault him. Plaintiff complains that the policy requiring only observation (and not full searches) of inmates transported from one pod to another within the secure perimeter of the jail allowed his assailant to transport a concealed weapon from A pod to D pod, where he used it to attack Plaintiff. (Doc. at 32-1 at 47). Plaintiff argues that the jail could have prevented the attack by requiring full searches of all inmates being moved within its secure perimeter, rather than only of inmates entering or returning from outside the jail's secure perimeter. However, Plaintiff admits that other institutions in which he has been incarcerated have had a similar policy, in that inmates are not searched on every occasion they are transported within a secure perimeter. (Doc. 32-1 at 50). Moreover, Plaintiff offers no evidence to support his theory that the referenced security procedures are constitutionally infirm, that Defendants should have known (or did know) that they were inadequate, or that the assault on Plaintiff was anything more than an isolated incident.

Plaintiff further claims that "shake-down" policies were not properly followed, because the contraband broken bunk bed bar was not discovered in time to prevent the assault. (Doc. 32-1 at 56-57). When asked to explain, Plaintiff responded "Somebody

15

didn't do something" because "the bar got transported" to D pod from A pod. (*Id.*) Essentially, Plaintiff argues that jail employees were negligent in their investigation of the broken window incident and/or were negligent in failing to discover the contraband concealed by his attacker during the observation of that inmate moving from A pod to D pod. Such a negligence claim is insufficient as a matter of law to show that the County enacted policies were "the moving force" behind his assault.

### 2. The County's Medical Policies

According to S.C.C.C. medical policy, all inmates have a right to access professional medical, dental, and mental health care. (Doc. 33-1 at 45). All inmates shall be provided appropriate medical care under the direction of a licensed physician and through the use of qualified and trained health care personnel. (*Id.* at 45-46). Further, all inmates have an equal opportunity to report medical complaints to medical staff on a daily basis; all medical complaints shall be referred to and reviewed by a nurse and/or physician. (*Id.* at 50). All medical request forms filed by inmates are saved to the inmates' medical file at S.C.C.C. (*Id.* at 5, ¶27). The foregoing policies and procedures were all in effect when the altercation occurred on September 4, 2018. (*Id.* at ¶24).

Assuming, *arguendo*, that jail employees violated the referenced policies and that their violations led to the assault and/or inadequate medical treatment, the violation of an appropriate policy by an employee does not create liability in a *Monell* claim. *See City of Canton*, 489 U.S. at 391 (finding that there can be no municipal liability where "an otherwise sound program has occasionally been negligently administered"); *Kosloski*, 347 Fed. Appx. at 181 (finding that there was no evidence that the alleged failure to meet the inmate's medical needs was anything other than an isolated incident). Municipal

liability under § 1983 attaches only where the decision-maker possesses final authority to establish policy with respect to an ordered action on a single occasion. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S.Ct. 1292 (1986). Here, Defendants were not decision-makers for the specific actions of which Plaintiff complains. The record does not indicate that any Defendant ordered any action - or inaction - with regard to Plaintiff's alleged requests for follow-up medical treatment or with regard to concerns for his safety (which were unknown prior to the attack). If jail employees consciously disregarded or ignored any serious risk to Plaintiff's safety or medical needs, such conduct was contrary to Defendants' express written policies.

### IV. Conclusion and Recommendation

For the foregoing reasons, there is no genuine issue of material fact on whether Plaintiff was deprived of any constitutional right, or whether the County's policies were the moving force behind any alleged constitutional violation. Therefore, Defendants cannot be held liable under § 1983 and are entitled to judgment as a matter of law.

Accordingly, **IT IS RECOMMENDED THAT:**

1. Defendants' motion for summary judgment (Doc. 33) be **GRANTED**; and
2. This case be dismissed with prejudice from the active docket of this Court.

                 *s/ Stephanie K. Bowman*
                 Stephanie K. Bowman
                 United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

NATHAN L. STILTNER,

Plaintiff,

v.

MARTY V. DONINI, et al.,

Defendants

Case No. 1:19-cv-150

Black, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).